BROWN, Plaintiff-Appellee v. PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.

Ohio Appeals, Second District, Darke County.

No. 640.   Decided April 30, 1945.

Murphy & Staley, Greenville, for plaintiff-appellee.

Baird Broomhall, Troy, Goubeaux & Goubeaux, Greenville, for defendant-appellant.

## OPINION

By MILLER, J.

This is an appeal on questions of law from the Common Pleas Court of Darke County, Ohio, wherein a verdict and judgment was rendered for the plaintiff for $500.00 for damages sustained by his automobile while crossing the tracks of the Pennsylvania Railroad Company and being struck by one of its passenger trains.

The assignment of errors is:

(1) The verdict of the jury and judgment of the court were manifestly against the weight of the evidence and contrary to law.

(2) The Court erred in refusing to direct a verdict at the close of plaintiff's testimony and at the close of all the testimony.

(3) The Court erred in overruling the motion of the defendant for judgment notwithstanding the verdict.

The evidence discloses that on the morning of September 21, 1942, at about 7:00 o'clock, Elizabeth C. Brown, the wife of the plaintiff, drove him in his 1940 Chevrolet coach to the Greenville Hospital where he was to undergo a tonsillectomy. This operation was performed somewhere between nine and ten o'clock A. M. the same day, under a general anaesthetic.

Before the Browns went to Greenville that morning and before he was taken to the operating room, it was discussed and arranged that Mrs. Brown should go to Greenville and buy a lounging robe, a pair of house slippers and other items for her husband. Pursuant to that arrangement and with her husband's permission and consent, Mrs. Brown drove to Greenville for the purpose of completing that errand while Mr. Brown was in the operating room. The Greenville Hospital was located on Sweitzer Street some distance from the Pennsylvania Railroad tracks. When Mrs. Brown left the hospital she drove north on that street toward the Pennsylvania Railroad Crossing. When she was some distance south of the tracks she saw the flasher lights flashing at the crossing. She then continued and stopped at a short distance back of

the crossing. No train arrived and she then drove closer to the tracks, looked both ways and saw no train. After another wait, no train approached, so she put her car in low gear and started over the tracks at the speed of about ten miles per hour. After her automobile was on the tracks her motor stalled and she was unable to start it. While in that position she heard the whistle of an approaching train and looking up she saw the train approaching about 75 feet distant and moving about 20 to 25 miles per hour. She escaped from the automobile, which was struck by the train and demolished.

Plaintiff, as a basis for his recovery, charges the defendant with certain acts of negligence, to-wit, failure to maintain and keep in repair the crossing as required by law; that the train was being operated at a speed in excess of 15 miles per hour in violation of the ordinances of the city of Greenville; that a whistle or bell was not sounded as required by law. The defense was a general denial and also contributory negligence.

It is not necessary to discuss the issue of the defendant's negligence raised by the pleadings and evidence, since the evidence on that issue was conflicting and the jury was justified in finding that certain acts of negligence were committed by the defendant. The chief legal question, as we see it, is whether the undisputed evidence discloses that the plaintiff was guilty of contributory negligence as a matter of law.

The plaintiff was the owner of the automobile which was being driven by his wife. The mere fact of the relationship between these parties raises no presumption of agency, but we find from the testimony of the plaintiff and his wife that she was acting in such a capacity.

Let us look at the testimony of Elizabeth C. Brown, wife of the plaintiff, on cross-examination, wherein she testified as follows:

"Q. And when this accident happened you were going down town on an errand for your husband? A. That's right.

Q. He had asked you to go down town for him? A. We had talked it over on the way into the hospital. He told me while he was in the operating room that I should go down, and I wanted to wait until they had brought him back, but the nurse told me that he would be under the anaesthetic for quite sometime; that I should go then so that I would be back by the time that he was—"

James E. Brown, the plaintiff, testified on cross-examination as follows:

"Q. You knew, however, that she intended to go down town? A. That is right. She said she would go down town that morning.

Q. You knew that she was going to use your car to go? A. That's right.

Q. And the trip was made for your benefit? A. That's right.

Q. To get you a robe and slippers? A. Yes."

"At common law, a married woman was held not liable for torts committed by her husband as her agent, because of her disability to contract. But under the modern statutes removing such disability and giving her the power to manage and control her property, the wife is now held responsible for the torts of her husband committed within the scope of his authority as her agent. This rule is sustained by the weight of authority, and is the rule in Ohio." **21 O. Jur. p. 406.**

It is therefore, our conclusion, from the undisputed testimony, that the wife was acting as the agent of the plaintiff, her husband, at the time the damage was sustained, and her acts will be construed as those of the plaintiff.

The record discloses that when she was approaching the railroad crossing, Elizabeth Brown saw the automatic signals flashing. She stopped at the track because they were flashing. She did not see a train, but other automobiles were crossing the tracks, so she drove on the crossing and her car stalled there. She says that she did not see the lights flashing just as she drove upon the tracks, but yet there is undisputed evidence that they were in good condition; that they had been flashing a short time before the accident, and they were also flashing after the accident, and it can reasonably be presumed that they were flashing when she drove upon the crossing. She did not see the lights flashing as she started to cross the tracks, but she does not say that she looked at the lights at this time. We feel that it can be reasonably presumed that since she was intent upon looking for a train, that she did not look just before she started over the tracks to see if they were flashing at that time. The rule, we think, is well established in Ohio, that one who drives his automobile on a railroad crossing disregarding the watchman with a stop sign, or a bell, or flashing signal, is guilty of contributory negligence as a matter of law, when struck by an oncoming train.

In discussing this question in the case of **Pennsylvania**

Railroad Company v Farrell, Admx., 11 Abs., 343, the Court said:

"So the question arises, can a motorist drive onto a grade crossing under such circumstances, into the path of an oncoming train, and be heard to say that his conduct did not contribute to the slightest degree to his injury? It has been held repeatedly in Ohio and other jurisdictions that 'a disregard of a flagman has been held to be contributory negligence although defendant running at a speed in excess of ordinance.' "

The case of **Lohrey v B. & O. Railroad, 131 Oh St 386,** is similar to the case at bar, only crossing gates were used as a warning signal instead of flashing red lights. The facts in this case disclose that the driver of the plaintiff's truck did not stop immediately as the crossing gates were being lowered. He got under the south gate before it was down and then gave his truck the gas and tried to get across three sets of tracks to the north gate. The gates were far enough back of the tracks that he could have stopped before crossing any of them. He did not see the approaching train. One of the defenses was contributory negligence.

At the close of all the evidence defendant moved the court for an instructed verdict on the ground that the evidence showed that the driver of the truck was guilty of contributory negligence as a matter of law. The trial court sustained the motion and a verdict was returned in favor of the defendant. The case finally reached the Supreme Court which affirmed the ruling of the trial court.

In the case of **Railroad Co. v Ehlert, .63 Oh St 320,** the syllabi read as follows:

"1. When the gates across a highway at a railroad crossing are closed they definitely warn the public that the crossing, whether it is of a single or a double track, is, for the time being, to be used for the passage of trains.

2. One who, with knowledge of such warning, passes a closed gate and takes a position upon the crossing is guilty of negligence which will prevent a recovery for injuries he may receive from a passing train."

We are of the opinion that for the foregoing reasons the Court should have directed a verdict at the close of the plaintiff's evidence, and again at the close of all the evidence,

and that the motion for judgment notwithstanding the verdict should have been sustained.

The judgment of the trial court is reversed and judgment is ordered rendered for the defendant.

HORNBECK, P. J., and GEIGER, J., concur.