**KNAFF, Plaintiff-Appellee, v. NEW YORK CENTRAL RAILROAD CO., Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2036.   Decided May 9, 1949.

Baggott & Johnston, Dayton, Donald L. Ziegel and King & Young, Eaton, for plaintiff-appellee.

Routzohn, Routzohn & Nevin, Dayton, for defendant-appellant.

### OPINION

By HORNBECK, J.:

The appeal is on questions of law from a judgment of the Common Pleas Court in favor of the plaintiff in the sum of $15,000.00, with costs.

The action was for wrongful death predicated upon five specifications of negligence set up in the amended petition.

Plaintiff's decedent was a passenger in a Chrysler 1941 Sedan, riding on the right side of the front seat. The driver of the car was Arthur Fritz whose wife was also riding in the front seat between him and plaintiff's decedent. In the rear seat there were four passengers, two men and two women. The automobile was proceeding eastwardly on Bolander Street in the city of Dayton which is intersected by the north and southbound tracks of defendant railway. The locomotive which struck the automobile was attached to a train of some fourteen empty cars moving northwardly. There were also southerly tracks which Fritz had first to cross. The collision occurred at 3:30 A. M. on September 3, 1946. Of the passengers in the car, four others besides the decedent were killed.

The five specifications of negligence were:

(1) The operating of the locomotive at an excessive speed in violation of the city ordinance.

(2) Speed greater than was reasonable and proper and in the exercise of ordinary care.

(3) Failure to give reasonable warning by sounding a bell or whistle.

(4) Failure to maintain a watchman, gates, or flashing lights at the crossing, and

(5) Erection and maintenance within its right-of-way of poles, boxes, cables and other obstructions in such proximity to the crossing as to obscure and obstruct the view of defendant's right-of-way toward the south.

The trial judge submitted to the jury all five of the charges of negligence.

Five errors are assigned:

(1) The overruling of defendant's motion to direct verdict and for judgment notwithstanding the verdict.

(2) In submitting all five of the specifications of negligence to the jury.

(3) Errors in the general charge and in the giving of special charges requested by counsel for plaintiff and refusing to give certain special charges requested by the defendant.

(4) In the admission and rejection of evidence.

(5) Overruling the defendant's motion for new trial, particularly for the reason that the verdict was manifestly against the weight of the evidence.

We are content to say without further comment that assignments Nos. 1 and 4 are not well taken.

Upon the factual development the only eye witness to the collision was the driver of the automobile, Arthur Fritz. He

testified that he was familiar with the crossing; that as he approached the crossing he stopped about twelve feet west of the west rail and eleven feet from the south curb of Bolander Ave., at which time he had a view to the south of 150 to 200 feet.

It is inferable from the testimony that if he so stopped, the front of his car was a distance of about 2 feet from what would be the overhang of a train travelling on the southbound track. Fritz inquired of Duanna Knaff if she heard any engines to which she replied, "No, I don't hear or see any." He states that he was then looking down the track and so was Duanna Knaff. An automobile passed him to his left, moving at great speed. He states that he approached the crossing at a rate of speed of about 20 to 25 miles per hour and that after he had stopped he first looked to the north and then to the south and started up over the crossing, moving at a rate of speed from 5 to 10 miles per hour; that after he looked to see the car coming west on Bolander, he again looked south when he saw the oncoming locomotive at a distance of about 25 feet; that he then "hit the gas and his car jumped" but he did not clear the track and the auto was struck in the right rear. He fixed the rate of speed of the locomotive at 60 miles per hour. One other witness fixed it at 40 to 50 miles per hour and another said that it was moving fast. Fritz said that although all of the windows in the auto were halfway down he heard no bell from the signal box, no bell or whistle from the locomotive. It is conceded that no watchman was on duty, one having left at 1:30 A. M. and another coming on at 5:00 A. M. Fritz also stated that had he stopped 34 feet from the southbound track he could see down that track a distance of 200 feet. The distance from the westerly rail of the southbound tracks from the westerly rail of the northbound tracks is about 20 feet. In the line of vision of the driver, if he stopped where he stated he did, there were several obstructions on the right-of-way of the company, including the signal bell upon a pole about 6 feet high, the signal box attached to this pole and another pole at about the same heights. Adjacent to these poles was another cement pole, a little shorter than they, and three other poles, a wire fence and other poles with crossarms at varying distances to the south. Adjacent to the fence along the right-of-way of the company and to the west there also was a pile of coal and buildings which would have obstructed the view had the driver stopped at a distance further to his west as he approached the crossing. There was testimony respecting other obstructions not on the

right-of-way of the company. There was dispute in the evidence as to the speed of the train, whether or not the signal bell was being sounded at the time of the collision and whether or not the whistle and bell were being sounded on the locomotive. The record also develops the visibility of the crossing both to the north and to the south from varying distances from the intersection. The credibility of the statements of the driver was attacked by producing what purported to be a report of an interview between him and an agent of defendant company in which he made statements contradictory to those testified by him on the witness stand. Testimony also was developed purposed to establish that those in the automobile at the time of the collision had been drinking, during the hours preceding the collision and, possibly in the car, all of which was denied and the driver testified that he drank no intoxicating liquor whatever on the night and morning prior to the collision, and in this he was corroborated by one witness. There was also testimony to the effect that there were wine and beer bottles in the automobile but this was denied, not only by Fritz but by at least one other witness for the plaintiff.

It thus appears that evidence was produced on behalf of plaintiff tending to support each and every one of the five specifications of negligence which were submitted to the jury. We find no basis whatever for the claim that these specifications should not have been submitted, except as it relates to the 4th. We doubt if there is enough averment of operative facts to require the conclusion that the crossing in question was unusually dangerous or especially hazardous. We doubt if it is prerequisite to good pleading that one of the terms "peculiarly hazardous", "especially dangerous", or "unusually dangerous" be employed to state a ground of negligence as to the failure to maintain proper warnings. It is, however, necessary to good pleading that the facts be set up, the existence of which constitute the crossing as "dangerous", "especially dangerous," or "peculiarly hazardous", We have read the very fine opinion of Judge Cecil, Lacey v. New York Central Railroad Company, 99,120 Montgomery County Common Pleas Court, and are in accord with it insofar as it comports with our conclusion here reached.

The 4th charge of negligence, standing alone, in probability does not state a good cause of action. The only observation respecting the hazardous nature of the crossing is by assuming that it was hazardous in its nature. If, in conjunction with the 4th specification, the averments of the 5th could be considered, there would be no doubt of the sufficiency of the 4th

specification. **Railway Company v. Schneider, 45 Oh St 678, Weaver v. Ry. Company, 76 Oh St 164.** The 5th specification clearly brought into the case the dangerous character of the crossing as it affected the exercise of due care on the part of the operatives of the defendant company.

However, as the other four specifications of negligence were properly pleaded, supported by some testimony and correctly submitted to the jury, the application of the Two Issue rule renders any error in the submission of the 4th specification of negligence non-prejudicial. **Oschner, Admr. v. Cincinnati Traction Company, 107 Oh St 33.**

Assignment of error No. 3 is directed to the general charge and special charges given at the request of counsel for the plaintiff and special charges requested by defendant which were refused. The general charge is correct, succinct and well presented the issues and the law controlling with the one exception that we have heretofore indicated. Plaintiff requested three special charges before argument, two of which the court gave. Defendant requested twenty one, fifteen of which the court gave. Without discussing the charges specifically, we are satisfied to say that we find no prejudicial error in the charges given at the request of plaintiff nor the refusal to give certain charges requested by defendant.

Assigment of error No. 4 relates to the rulings respecting the admission or rejection of evidence, which assignment is not well made.

Much reliance is placed upon the claim that the negligence of the driver of the car was the sole proximate cause of the death of plaintiff's decedent, and if not, that plaintiff's decedent, herself, was contributorily negligent.

**Woodworth, Admx. v. N. Y. Central Ry. Co. 149 Oh St 543; Patton v. Pennsylvania Ry. Co., 136 Oh St 159; Farmer v. The P. C. C. & St. L. Ry., 83 Oh Ap 321; Brown v. Pennsylvania Ry. Co., 43 Abs 313; Lang v. Pennsylvania Ry. Co., 59 Oh Ap 345; Ballmer v. Penna. Ry. Co., 59 Oh Ap 221; D. T. & I. Ry. Co. v. Rohrs, 114 Oh St 493; C. C. C. & St. L. Ry. v. Lee, 111 Oh St 391; Penna. Ry. Co. v. Rusynik, 117 Oh St 530.**

All of these cases tested the negligence of the plaintiff who, himself, was seeking to make recovery and manifestly, if the plaintiff was negligent and his negligence was a proximate cause of his injury or death recovery could not be had. Here, the test is not quite so narrow. Upon the driver's own testimony plaintiff's decedent took some part in attempting to determine if there was an oncoming train on the tracks which they were approaching.

There is sufficient testimony here, giving to the testimony on behalf of plaintiff its most favorable intendment, to make a jury question whether or not the driver of the car was negligent and, if so, whether his negligence was the sole proximate cause of the collision.

The negligence of plaintiff's driver may not in Ohio be imputed to her. **Baltimore & Ohio Rd. Co. v. Brown, Admr., 36 Oh Ap 404.**

But it is urged that because of the fact that plaintiff's decedent was asked by the driver of the car if she heard any engines approaching, and she replied that she did not hear or see any, that she, having assumed to look and listen, was contributorily negligent because she should have seen the oncoming locomotive and should have heard the signals. Upon this narrow question, there was a factual issue whether or not she could see the oncoming locomotive if she looked and when she reported and whether or not she could have heard any warnings of its approach.

Appellant cites Morningstar v. North East Penna. Ry. Co. (Penna.) 137 Atl. 800, Garis v. Lehigh and New England Ry. Co. (Pa.) 188 Atl, 76 and Smellie v. So. Pac. Co. (Cal.) 269 Pac. 657. These authorities may be distinguished from the instant case. In the Morningstar case, there was no attempt to stop the automobile at the intersection. There were no obstructions to the south, the direction from which the train was coming. The driver depended entirely upon the guest to look for the train to the south from which direction the train which struck them came, while the driver looked to the north. The view to the south was not obstructed had the driver or the guest looked for the oncoming train seasonably. The pattern in the Smellie case from California is much like the Morningstar case. In the Garis case, supra, it was admitted that the guest undertook to direct the operation of the auto as it approached the crossing. The court found as a matter of fact that there was not the slightest foundation for the claim that there was any inadequacy of view which prevented the driver or the guest from seeing the oncoming box-car. The car and locomotive were moving slowly.

In the instant case the guest exercised and attempted to exercise no control over the driver in his handling of the car. It is his testimony that as soon as he saw the oncoming locomotive he put his foot on the gas, that the car jumped and that all of it cleared the track but a part of the rear right end. There was an issue whether or not defendant's operatives saw, or in the exercise of ordinary care should

have seen, the automobile upon the track in time to have slackened its speed and thus have prevented the collision. The jury had a right to find that even a slight slackening of speed of the locomotive might have prevented the collision.

Upon the whole record, we are satisfied that the plaintiff had the right to go to the jury on all three issues presented by the pleadings, namely, the negligence of the defendant company, the contributory negligence of plaintiff's decedent, the negligence of the driver of the car, and whether or not, if he was negligent, it was the sole proximate cause of the collision.

We do not find prejudicial error in the trial of the cause in any of the particulars assigned by the appellant. The judgment will be affirmed.

MILLER, PJ, and WISEMAN, J, concur.